IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Kenneth John Butler, | ) | Case No. 8:11-cv-3328-GRA-JDA |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| | ) | |
| State of South Carolina; William R. Byars; | ) | |
| Warden of McCormick Correctional | ) | |
| Institution,[1] | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 12.] Petitioner is a state prisoner who seeks relief pursuant to Title 28, United States Code, Section 2254. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner, proceeding with the assistance of counsel, filed this Petition for writ of habeas corpus on December 8, 2011. [Doc. 3.] On February 6, 2012, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 11, 12.] On February 29, 2012, in the absence of a response to the motion, the Court issued an Order directing Petitioner to respond to the motion for summary judgment or the action would be

_____

[1] Because a prisoner's custodian is the proper respondent in a habeas corpus action, *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004), Respondents State of South Carolina and William R. Byars were terminated as parties and Respondent Warden of McCormick Correctional Institution was added as a party on December 13, 2011, as directed by the Court's Order authorizing service of process. [Doc. 7.] Accordingly, throughout this Report and Recommendation the Court refers to Respondent Warden of McCormick Correctional Institution as "Respondent."

subject to dismissal for failure to prosecute.  [Doc. 16.]  On April 5, 2012, Petitioner filed a response in opposition to the motion for summary judgment [Doc. 24], as well as a motion to test forensic evidence [Doc. 25] and numerous exhibits [Docs. 30, 31].[2]  On May 17, 2012, the Court filed an Order to Show Cause why the Petition should not be dismissed as untimely.  [Doc. 39.]  Petitioner filed a response to the Order to Show Cause on June 7, 2012 [Doc. 45], and Respondent filed a reply on June 12, 2012 [Doc. 47].

In a separately filed Order, the Court has denied Petitioner's motion to test forensic evidence.  Having carefully considered the parties' submissions and the record in this case, the Court recommends that Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is presently confined at the McCormick Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Laurens County Clerk of Court.  [Doc. 3 at 2.]  Petitioner was indicted at the April 1998 term of the Laurens County Grand Jury for conspiracy to commit armed robbery, accessory before the fact of armed robbery, armed robbery, accessory after the fact of armed robbery, conspiracy to commit murder, accessory before the fact of murder, murder, accessory after the fact of murder, and possession of a firearm or knife during commission of a violent crime.  [2d Supp. App. 124–29.[3]]  On June 10, 1998, represented by J. Michael Turner

---

[2] Petitioner's response in opposition and motion to test forensic evidence were contained in one brief, and for ease of reference and ruling, the Clerk of Court docketed the brief as two separate entries, Docket Entry Numbers 24 and 25.  Therefore, the exhibits, Docket Entry Numbers 30 and 31, pertain to both the response in opposition and the motion to test forensic evidence.

[3] The Appendix can be found at Docket Entry Number 11-7, the Supplemental Appendix at Docket Entry Number 11-8, and the Second Supplement Appendix at Docket Entry Number 11-9.

("Turner"), Petitioner pled guilty to conspiracy to commit armed robbery, armed robbery, conspiracy to commit murder, murder, and possession of a firearm or knife during commission of a violent crime. [Supp. App. 1–18.] Sentencing was deferred pending Petitioner's cooperation pursuant to the terms of the plea agreement. [*Id.* at 17–18; *see* 2d Supp. App. 1–4 (plea agreement).]

On July 6, 1998, Petitioner wrote a letter to the Laurens County Clerk of Court indicating his intent to withdraw his guilty plea. [2d Supp. App. 109–10 (letter postmarked July 8, 1998).] On July 10, 1998, Petitioner signed a handwritten note releasing Turner as his counsel and requesting Turner to send Petitioner's file to attorney Cheryl Aaron ("Aaron"); on the same day, Petitioner also signed a form waiving any conflict of interest arising from Aaron's representation of Petitioner. [*Id.* at 106–08.] Ultimately, Aaron was precluded from proceeding as Petitioner's counsel due to the appearance of a conflict of interest, and attorney Dale Cabler ("Cabler") was substituted as Petitioner's counsel. [*Id.* at 62–105.]

On September 15, 1999, a hearing was held on Petitioner's motion to withdraw his guilty plea, where Petitioner was represented by Cabler. [App. 1–27.] Cabler sought to introduce testimony from Petitioner and his mother regarding Petitioner's motivation for pleading guilty, but the judge did not allow Petitioner or his mother to testify, although he did allow Cabler to present the substance of their testimony. [App. 5–25.] After hearing the arguments from Petitioner and the State, the judge denied Petitioner's motion to withdraw his guilty plea. [App. 25–27.] Following the denial of the motion to withdraw the plea, the judge proceeded to sentence Petitioner to imprisonment for life for murder, 30 years for armed robbery, and five years each for conspiracy to commit murder, conspiracy

3

to commit armed robbery, and the weapons charge, all sentences to run concurrently. [App. 34; *see also* 2d Supp. App. 26–33 (sentencing sheets).]

**Direct Appeal**

A timely notice of appeal was filed on Petitioner's behalf. [2d Supp. App. 121–22.] The appeal was initially dismissed but was reinstated on November 18, 1999. [*Id.* at 11, 123.] On February 9, 2001, Robert M. Pachak ("Pachak") of the South Carolina Office of Appellate Defense filed an *Anders* brief[4] and request to be relieved as counsel on Petitioner's behalf; the brief addressed whether Petitioner's guilty plea complied with the mandates of *Boykin v. Alabama*, 395 U.S. 238 (1969). [App. 38–46.] The South Carolina Court of Appeals denied Pachak's request to be relieved and requested further briefing on the following issue:

> Did the trial court err in refusing to allow Butler to withdraw his pleas and in refusing to allow him to testify at the hearing on the motion to withdraw the pleas?

[App. 47–48.] On December 17, 2002, after receiving the parties' briefs [App. 49–74], the Court of Appeals affirmed Petitioner's conviction and sentence. [2d Supp. App. 6–10.] Remittitur was issued on January 7, 2003. [*Id.* at 5.]

**PCR Proceedings**

On September 23, 2003, Petitioner filed a pro se application for post-conviction relief ("PCR"). [App. 75–100.] As his grounds for relief, Petitioner alleged ineffective assistance of counsel, lack of subject matter jurisdiction, and a violation of due process. [App. 79–97.] On July 16, 2007, Petitioner, through counsel John D. "Jay" Elliott ("Elliott") and James W.

---

[4] A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), in effect concedes the appeal lacks a meritorious claim.

Bannister ("Bannister"), filed a motion to amend the application to allege another ineffective assistance claim, a *Brady* violation,[5] and a Fifth Amendment violation as additional grounds for relief.  [App. 106–10.]

Petitioner, through counsel, also filed a motion for DNA testing on June 22, 2007. [2d Supp. App. 21–22.]  Specifically, Petitioner moved to have DNA evidence gathered from cigarette butts found at the crime scene compared with the Comprehensive Offender Database Indexing System ("CODIS").[6]  [*Id.*] Because CODIS was not in existence, or was

---

[5] In *Brady v. Maryland*, the Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. 83, 87 (1963).  Thus, a *Brady* claim is a ground for relief from a conviction or sentence based on a violation of due process.

[6] One district court has provided the following background with respect to CODIS:

> In 1994, Congress authorized the Federal Bureau of Investigation to create a national index of DNA samples taken from convicted offenders, crime scenes, and unidentified human remains which could be used by criminal justice agencies for law enforcement identification, in judicial proceedings, and for criminal defense purposes.  As a result, the FBI established the Combined DNA Index System (CODIS), which allows state and local forensics laboratories to exchange and compare electronic DNA profiles in order to match crime scene evidence to convicted offenders on file in the system.  By 2000, all fifty states had enacted statutes requiring convicted offenders to provide DNA samples for analysis and entry in CODIS. However, samples taken from federal offenders were not included in CODIS "because the language of the 1994 act only authorized the creation of the CODIS system, and not the taking of samples from persons convicted of Federal crimes."  In 2000, in response to the perceived need to include federal offender samples in CODIS, Congress passed the DNA Analysis Backlog Elimination Act, which granted authority for collection of these samples and also provided for federal grants to the states to assist in reducing the backlog of biological samples waiting to be analyzed in the state systems. . . . In 2006, the law was amended to authorize the collection of DNA from any person in the custody of the BOP that has been convicted of a felony.  In addition, it is relevant to note that the federal statute strictly limits use of the DNA data base to law enforcement and criminal defense purposes and requires removal of an inmate's DNA sample from the data base upon proof that the conviction warranting the extraction of the sample has been overturned.

*Marrero v. O'Brien*, No. 1:11cv106, 2011 WL 6965659, at *2 (N.D.W. Va. Dec. 6, 2011) (unpublished opinion) (citations omitted).

in its mere infancy, when the DNA sample was taken from the scene, Petitioner argued results obtained from comparing the DNA sample against CODIS would constitute newly discovered evidence that should be examined by the PCR court in considering Petitioner's PCR application.  [App. 113.]

On July 17, 2007, a hearing was held on Petitioner's motion for DNA testing[7] and his PCR application.  [App. 115–272.]  As to Petitioner's PCR application, testimony was heard from Turner, the Laurens County Sheriff's Office records custodian, Petitioner, and Petitioner's mother.  [App. 129–270.]  On October 10, 2007, the PCR court entered an order denying the motion for DNA testing and denying and dismissing Petitioner's PCR application.  [App. 273–89.]

On January 15, 2009, Joseph L. Savitz, Chief Appellate Defender of the South Carolina Office of Indigent Defense, filed a petition for writ of certiorari to the South Carolina Supreme Court on Petitioner's behalf.  [Doc. 11-3.]  The matter was designated to the South Carolina Court of Appeals, and on January 19, 2011, the Court of Appeals entered an order denying the petition for writ of certiorari.  [Doc. 11-5.]  Remittitur was issued on February 4, 2011.  [Doc. 11-6.]

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on December 8, 2011 pursuant to 28 U.S.C. § 2254.  [Doc. 3.]  Petitioner raises the following grounds for relief, quoted substantially verbatim:

---

[7] On July 28, 2007, subsequent to the hearing, Petitioner submitted a memorandum of law in support of the motion for DNA testing.  [App. 111–14.]  The State submitted a memorandum of law  regarding the motion on July 30, 2007.  [2d Supp. App. 23–24.]

| | |
|---|---|
| **Ground One:** | Brady Violation |
| *Supporting Facts:* | The State failed to provide defense counsel with an exonerating polygraph by the Defendant. |
| **Ground Two:** | Ineffective Assistance of Counsel |
| *Supporting Facts:* | Defense Counsel failed to adequately review the State's evidence. Defense Counsel relied exclusively on Prosecution's version of the facts when these facts were contradicted by the forensic evidence. |
| **Ground Three:** | Ineffective Assistance of Counsel |
| *Supporting Facts:* | Defense Counsel failed to have exonerating DNA evidence screened to identify perpetrator. |
| **Ground Four:** | Due Process: Inadequate Review of Post-Conviction Relief. |
| *Supporting Facts:* | S.C. created a new method by which appeals from Post Conviction Relief are reviewed. This procedure is inadequate to provide meaningful review and thus, violates the Due Process Clause of the 6th Amendment as applied by the 14th Amendment. |

[*Id.*] As previously stated, on February 6, 2012, Respondent filed a motion for summary judgment. [Doc. 12.] On April 5, 2012, Petitioner filed a response in opposition[8] [Doc. 24], and on April 16, 2012, Respondent filed a reply [Doc. 33].

Upon review of the record of the proceedings in state court, the Court found the Petition was likely time-barred. On May 17, 2012, the Court issued an Order to Show Cause, allowing Petitioner to address whether the Petition is time-barred and Respondent to reply to any arguments raised by Petitioner. [Doc. 39.] On June 7, 2012, Petitioner

---

[8] Petitioner filed his response to Respondent's motion for summary judgment in the form of a declaration of facts necessary for the proper determination of the motion, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. [Doc. 24 at 1.]

submitted a response to the Order to Show Cause, arguing equitable tolling should apply to toll the limitations period and renewing his motion to test forensic evidence. [Doc. 45.] Respondent submitted a reply on June 12, 2012, asserting his failure to raise the statute of limitations defense in its motion for summary judgment and memorandum in support did not waive his limitations defense, agreeing with the Court that the Petition is time-barred, and arguing Petitioner failed to demonstrate he was entitled to equitable tolling. [Doc. 47.]

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must

demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

> *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

***Procedural Bar***

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)  (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)  (I) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[9] Further, strict time deadlines govern direct appeal and the filing

---

[9]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will

of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

### *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state

---

not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991).  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court.  S.C. App. Ct. R. 203(d)(3), 243.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).  As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim.  *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477

U.S. 478, 496 (1986).  Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim.  *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87.  In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply.  *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96.  A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel.  *Id.* at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However,

if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse

a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must

demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

### *Statute of Limitations*

Under the AEDPA, petitioners have one year to file a petition for writ of habeas

corpus. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1)(A)–(D). However, the statute tolls the limitations period during the time "a

properly filed application for State post-conviction or other collateral review with respect to

the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

An application for post-conviction or other collateral review is not properly filed if the

application is untimely under state law. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005)

("When a postconviction petition is untimely under state law, 'that [is] the end of the matter'

for purposes of § 2244(d)(2)." (alteration in original)). In *Pace*, the United States Supreme

Court held that time limits on filing applications for post-conviction or collateral review are

filing conditions, no matter the form of the time limit. *Id.* at 417. Therefore, if an application for post-conviction or collateral review is barred by a state statute of limitations, statutory tolling under § 2244(d)(2) does not apply because the application was not properly filed.

The Supreme Court recently recognized that the limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition. *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418). Therefore, "specific circumstances . . . could warrant special treatment in an appropriate case" such that the limitations period is not strictly applied. *Id.* at 2563.

## DISCUSSION

Upon consideration of the parties' arguments as to the timeliness of the Petition, the Court concludes the Petition is time-barred under the AEDPA's one-year statute of limitations.[10]

**Expiration of Limitations Period**

---

[10] In *Day v. McDonough*, the Supreme Court noted Rule 5(b) of the Rules Governing Section 2254 Cases in the United States District Courts places the § 2244(d) statute of limitations on equal footing with exhaustion of state remedies, the procedural bar, and non-retroactivity. 547 U.S. 198, 209 (2006). The Court also noted that, under the AEDPA, "'[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement,'" *id.* at 206 n.4 (alteration in *Day*) (quoting 28 U.S.C. § 2254(b)(3)), and stated "it [would be] an abuse of discretion to override a State's deliberate waiver of a limitations defense," *id.* at 202. The Court declined to view as an intelligent waiver the government's assertion that the petition in *Day* was timely because the government's position was based on a clear miscalculation of the limitations period. *Id.* at 210–11. The Court concluded a district court is "permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition" as long as the court "accord[s] the parties fair notice and an opportunity to present their positions." 547 U.S. at 209, 210. Here, through the Order to Show Cause, this Court has given the parties notice of the Court's intent to consider, sua sponte, the timeliness of the Petition and an opportunity to present their positions on the timeliness issue. [*See* Doc. 39.] Therefore, the Court may consider, sua sponte, the timeliness issue.

The South Carolina Court of Appeals issued remittitur in Petitioner's direct appeal on January 7, 2003 [2d Supp. App. 5], and Petitioner did not seek further review. Consequently, Petitioner had one year from January 7, 2003 to file a federal habeas petition. 28 U.S.C. § 2244(d)(1); *Holland*, 130 S. Ct. at 2558; *Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009); S.C. App. Ct. R. 221(b), 242(c) (addressing the time limits in which to seek rehearing by the South Carolina Court of Appeals and a writ of certiorari from the South Carolina Supreme Court, as well as when the Court of Appeals should issue remittitur). Petitioner filed a PCR application on September 23, 2003 [App. 75–100], such that 259 days of the one-year limitations period had expired before Petitioner filed his PCR application. The one-year period in which to file a federal habeas petition is tolled during the pendency of a PCR application or other collateral relief properly filed in state court, 28 U.S.C. § 2244(d)(2), and thus, the statute of limitations was tolled during the period the PCR application was pending—from September 23, 2003 until February 4, 2011, when the South Carolina Court of Appeals issued remittitur in the appeal from the denial of Petitioner's PCR application [Doc. 11-6]. Therefore, the one-year limitations period began to run again on February 4, 2011 and expired 106 days later on May 21, 2011.[11] As a result, the Petition—filed on December 8, 2011, more than six months after the expiration of the limitations period—is time-barred.

**Equitable Tolling**

---

[11] Pursuant to Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure, when calculating time, the last day of the period must be included, "but if the last day is a Saturday . . . the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Because May 21, 2011 was a Saturday, Petitioner had until Monday, May 23, 2011 to timely file a petition for writ of habeas corpus in federal court.

Petitioner appears to concede the Petition is time-barred [*see* Doc. 45 at 1–2 (stating that to avoid the application of the statute of limitations, Petitioner must demonstrate he is entitled to equitable tolling)] but asserts his actual innocence (1) as a free-standing claim sufficient to afford him federal habeas relief and (2) to overcome the time bar [*id.* at 2]. Petitioner reiterates that his actual innocence claim depends on the evidence he seeks through his motion to test forensic evidence. [*Id.*] However, as previously stated, the Court has denied Petitioner's motion to test forensic evidence because Petitioner has failed to demonstrate good cause for the testing.

As the United States Supreme Court has recognized,

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984).

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92, 96 (1990) (footnotes omitted). The United States Court of Appeals for the Fourth Circuit has underscored the very limited circumstances in cases subject to the AEDPA where equitable tolling will be permitted, holding a habeas petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Thus, rarely will circumstances warrant equitable tolling of the AEDPA limitations period:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).

Further, in the context of a motion time-barred under § 2244(d), the Court has doubts as to whether actual innocence provides grounds for equitable tolling or serves as an exception to the statute of limitations. While "[t]he Fourth Circuit has not expressly ruled that 'actual innocence' is an exception that permits equitable tolling[,] . . . other circuits have reasonably concluded that there is no such exception." *DiCaprio–Cuozzo v. Johnson*, 744 F. Supp. 2d 548, 559 (E.D. Va. 2010) (collecting cases that hold no actual innocence exception to the statute of limitations exists). On this basis, the Court concludes Petitioner's claim of actual innocence is not sufficient to overcome the application of the AEDPA one-year statute of limitations.

Moreover, the Court notes the United States Supreme Court has not recognized a freestanding actual innocence claim based on newly discovered evidence as a cognizable claim for federal habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). Thus, even if the Court had granted Petitioner's motion to test forensic evidence and Petitioner subsequently presented an

actual innocence claim based on new evidence, Petitioner would not have a cognizable claim for federal habeas relief. Therefore, the Court recommendations Respondent's motion for summary judgment be granted and the Petition be dismissed as untimely.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

Jacquelyn D. Austin
United States Magistrate Judge

June 15, 2012
Greenville, South Carolina